**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
In re:                                                                    :    Case No. 22-10881 (JLG)
                                                                              :
EASCO BOILER CORP., et al.,                             :    Chapter 11
                                                                              :
                                              Debtors.         :    (Jointly Administered)
------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER OVERRULING THE DEBTOR'S OBJECTION TO UNION PRIORITY SEVERANCE CLAIM NO. 39**

<u>**A P P E A R A N C E S**</u>**:**

RIEMER & BRAUNSTEIN LLP
*Attorneys for the Debtors*
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
<u>By:</u>    Alan L. Braunstein, Esq.
          Alissa L. Poynor, Esq.

THE LAW OFFICES OF AVRUM J. ROSEN, PLLC
*Attorneys for 32BJ SEIU*
38 New Street
Huntington, NY 11743
<u>By:</u>    Avrum J. Rosen, Esq.

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

### Introduction

Easco Boiler Corp. (the "Debtor") is a chapter 11 debtor herein. After the Court set a deadline for the Debtor's creditors to submit claims, the Local 32BJ SEIU Union timely filed the Union Claim[1] on behalf of certain of its members. In part, it asserts priority for severance payments under 11 U.S.C. § 507(a)(4) based on the Faithful Service Clause in collective bargaining agreements between the Debtor and the Union.

The Debtor objects to the alleged priority status, arguing that the Faithful Service Clause, which provides a right to three weeks' salary after a Union employee's disability or permanent layoff after a term of service of at least fifteen years, does not constitute "severance" under section 507(a)(4) of the Bankruptcy Code. In opposition, the Union argues that the Faithful Service Clause constitutes severance under Second Circuit precedent and should enjoy priority status. The Debtor and the Union both support their positions, in part, on evidence other than the collective bargaining agreement in effect on the Petition Date.

Having considered the parties' arguments and relevant case law, the Court concludes that the Faithful Service Clause confers a right to severance entitled to priority under section 507(a)(4) of the Bankruptcy Code.

---

[1] Terms that are used but not defined in this section are defined elsewhere in this document.

**Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

**The Chapter 11 Cases**

On June 27, 2022 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2] Thereafter, the Debtor remained in possession and control of its business and assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 8, 2022, the Court set October 14, 2022 (the "Bar Date") as the last day to file proofs of claim (the "Bar Date Order").[3] On January 30, 2023, the Debtor filed its Amended Plan of Liquidation.[4] On March 24, 2023, the Court confirmed the Plan.[5]

**The Union**

The Debtor is a member of the Boiler Industry Employers Association (the "Association"). It was party to certain collective bargaining agreements (each a "CBA," and collectively, the

---

[2] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, *In re Easco Boiler Corp.*, No. 22-10881 (Bankr. S.D.N.Y. filed June 27, 2022), ECF No. 1.

[3] *Order Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice*, ECF No. 96.

[4] *First Amended Chapter 11 Plan of Liquidation of Easco Boiler Corp.*, ECF No. 168.

[5] *Order Confirming Debtor Easco Boiler Corp.'s Amended Chapter 11 Plan of Liquidation Pursuant to 11 U.S.C. § 1129 and FED. R. BANKR. P. 3020*, ECF No. 200 (the "Plan").

3

"CBAs") between the Association and Local 32BJ SEIU (Service Employees International Union) (the "Union"). During the period from July 1998 through April 30, 2023, the Debtor and the Union were party to at least seven CBAs.

The CBA in effect during the period of July 26, 2001 until March 1, 2004 (the "2001 CBA"), contains a severance pay clause which states as follows:

> SEVERANCE PAY
>
> In the event of the discharge of a member of the Union. For other than good and just cause, the Employer shall pay severance pay, scaled according to length of service; and that such severance pay shall not be less than one week for each year of service, and not to exceed four weeks pay.

2001 CBA at 14–15. None of the CBAs in effect after July 31, 2004 contain a severance pay clause. However, all of them include so-called faithful service and prior better conditions clauses. The CBA in effect as of the Petition Date (the "May 2021 CBA")[6] states, as follows:

> THIRTY FIRST: FAITHFUL SERVICE
>
> An employee who has been employed for at least fifteen (15) years and who becomes disabled or who is permanently laid off shall receive from the Employer a lump sum payment of three (3) weeks pay.

May 2021 CBA at 20 (the "Faithful Service Clause"). It also states, as follows:

> It is understood and agreed that this agreement shall not in any way alter, change, modify or deprive any of the employees of any conditions that they are now enjoying or working under which are better than those specified in this Agreement, and they shall continue to receive any such better conditions during the life of this Agreement.

*Id.* at 13–14 (the "Prior Better Conditions Clause"). The 2001 CBA contains a Prior Better Conditions Clause but does not contain a Faithful Service Clause.

---

[6] The May 2021 CBA is annexed as Exhibit 7 to the Eastmond Affidavit.

**The Claims**

On November 17, 2022, the Union filed Proof of Claim No. 39 in the amount of $305,925.77 (the "Union Claim"), in its representative capacity on behalf of the Union employees (the "Union Employees") identified in the spreadsheet annexed to the addendum to the Union Claim (the "Addendum"). The Union lists "accrued vacation, sick and severance pay" as the basis of the claim and includes priority and unsecured portions. Union Claim at 2–3. The priority portion of the Union Claim is in the amount of $195,179.44 (the "Union Priority Claim") and is on account of "all amounts for accrued vacation, sick and severance pay for the 180-day priority period [under 11 U.S.C. § 507(a)(4)] (the 'Priority Period')." Addendum at 1. A portion of that amount—$106.433.38—is on account of amounts allegedly due and owing to Union members under the Faithful Service Clause who were laid off during the 180-day period prior to the Petition Date (the "Union Faithful Service Claim"). The general unsecured portion of the claim is in the sum of $110,746.33, and "is for all amounts for accrued vacation, sick and severance pay outside of the Priority Period." *Id.*

During the period between September 26, 2022 and November 14, 2022, the following Union Employees filed union related claims against the Debtor as set forth below (the "Union-Related Claims"):

(i) On September 26, 2022, Eric Medina filed Proof of Claim No. 26 for $2,294.99 seeking priority status under Section 507(a)(4) (asserting claims for "vacation and sick days").

(ii) On September 27, 2022, Ernesto Ramos filed Proof of Claim No. 20 for an unknown amount, seeking priority status under Section 507(a)(4) (asserting claims for wages, salaries or commission, vacation and for services performed).

(iii) On September 28, 2022, Harold Medina filed Proof of Claim No. 27 for $2,966.67 as a general unsecured claim.

(iv) On October 1, 2022, Rajnarine Singh, Jr. filed Proof of Claim No. 28 for $3,500.00 as a general unsecured claim (asserting claim for benefits, vacation pay and sick pay)[.]

(v) On October 1, 2022, Rajnarine Singh filed Proof of Claim No. 29 for $5,000.00 as a general unsecured claim (asserting claim for benefits, vacation pay and sick pay).

(vi) On November 14, 2022, Francisco Cruz filed Proof of Claim No. 37 for $9,581.64 seeking priority under Section 507(a)(4) for $193.67 (asserting claim for wages, salary or commission).

*See* Eastmond Affidavit, Exhibit 2.[7] None of the Union-Related Claims filed by the Union Employees assert claims for severance.

**The Claim Objections**

On March 6, 2023, the Debtor filed its First Omnibus Objection to Proofs of Claim No. 20, 21, 26, 27, 28, 29 and 37.[8] In it, the Debtor objected to the Union-Related Claims on the grounds that they were superseded by the Union Claim. The Court sustained that objection.[9]

On March 6, 2023, the Debtor filed an objection to the Union Claim (the "Objection").[10] The Debtor objected to the Union Priority Claim "because based on the Debtor's calculations of what is due under the statute (during the 180-day period), the Union Priority Claim should be a lower amount." Objection ¶ 10. It asserted that "[b]ased on the Debtor's books and records, the

---

[7] *Affidavit of Tyren Eastmond in Support of Debtor's Objection to Union Severance Clams*, ECF No. 247-1. ("Eastmond Affidavit.").

[8] *Debtor Easco Boiler Corp.'s First Omnibus Objection to Proofs of Claim No. 20, 21, 26, 27, 28, 29, and 37*, ECF No. 183.

[9] *Order Granting Debtor Easco Boiler Corp.'s First Omnibus Objection to Proofs of Claim No. 20, 21, 26, 27, 28, 29, and 37*, ECF No. 252.

[10] *Debtor Easco Boiler Corp.'s Objection to Proof of Claim No. 39 Filed by Local 32BJ SEIU in Its Representative Capacity on Behalf of Certain Employees*, ECF No. 180.

Union Priority Claim shall be reduced to $88,746.06." *Id.* As support for the Objection, the Debtor included an exhibit setting forth its calculation of the priority claim. *Id.*, Exhibit A.

On November 7, 2023, with leave of the Court,[11] the Debtor supplemented the Objection with a memorandum of law (the "Memorandum")[12] and the Eastman Affidavit. Briefly, the Debtor contends that the Union Faithful Service Claim is not entitled to priority status under section 507(a)(4), because, as a matter of law, the Faithful Service Clause does not give rise to a claim for severance under section 507(a)(4). The Debtor contends that is so because:

> (i) "The word 'severance' does not appear anywhere in the clause and New York law does not require employers to provide severance."
>
> (ii) "[Mr. Tyren,] the Debtor's principal[,] has confirmed that it was understood that the 'faithful service' provision was not a severance provision, but a bonus provision intended to reward 'faithful' employees who consistently worked for the Debtor for 15 consecutive years before retiring from the Debtor."
>
> (iii) "[T]he history of negotiations regarding the CBA support [sic] the Debtor's position; and . . . had the parties agreed on severance the CBA would have continued to incorporate the specific language providing for severance as it did in the 2001 agreement."

Memorandum at 4–5.

**<u>The Opposition</u>**

On November 7, 2023, the Union responded to the Objection (the "Opposition").[13] The Union contends that the Union Faithful Service Claim is entitled to priority treatment under section 507(a)(4) of the Bankruptcy Code because, as a matter of law, the Faithful Service Clause qualifies

---

[11] *Order, Minutes of October 24, 2023 Proceedings*, ECF No. 245.

[12] *Debtor's Supplemental Memorandum in Support of Objection to Union Priority Severance Claim No. 39*, ECF No. 247.

[13] *Opposition to the Debtor's Objection to Claim No. 39 Filed by Local 32BJ in Its Representative Capacity on Behalf of Certain Employees*, ECF No. 248.

as a severance provision under that section. *See* Opposition ¶ 5. The Union also argues that application of the Prior Better Conditions Clause in each CBA prevents any covered employee from losing any benefit conferred by a prior CBA or pattern and practice. The Union contends that the Prior Better Conditions Clause grandfathers benefits that were conferred under prior CBAs to the extent that those benefits are "better" than the benefits conferred under the operative CBA. It contends that since the 2001 CBA contains a severance provision, the Court must construe the Faithful Service Clause to provide covered employees with severance benefits. *See id.* ¶¶ 10–13.

## **Legal Framework**

Under section 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The filing of a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of a claim." FED. R. BANKR. P. 3001(f). The objecting party bears the initial burden of overcoming its prima facie validity. *See In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007).

Section 502(b) sets forth the grounds for disallowing a proof of claim filed under section 501 of the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.,* 549 U.S. 443, 449 (2007) ("even where a party in interest objects [to a claim], the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)"). Section 502(b) prescribes nine categories of claims that will be disallowed, including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). If an objection filed pursuant to section

8

502(b)(1) refutes at least one of the claim's essential allegations, the claimant has the burden to demonstrate the validity of the claim. *See In re Lehman Brothers Inc.*, No. 08-01420, 2015 WL 7451411, at *6 (Bankr. S.D.N.Y. Nov. 23, 2015). "When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

Section 507(a)(4) provides that priority status will be granted to allowed unsecured claims for "wages, salaries or commissions, including vacation, severance, and sick leave pay" earned by an individual "within 180 days before the date of the filing of the petition," but "only to the extent of $15,150." 11 U.S.C. § 507(a)(4).[14] Thus, for a severance claim to be entitled to priority under section 507(a)(4), claimant must earn it within 180 days prior to the bankruptcy filing.

The two objectives behind severance pay policies are "first, to protect employees from the economic hardship of joblessness, and second, to reward employees for past service to the company." *Bradwell v. GAF Corp.*, 954 F.2d 798, 801 (2d Cir. 1992). Consistent with that policy, in *Straus-Duparquet, Inc. v. Local Union No. 3, IBEW (In re Straus-Duparquet, Inc.)*, the Second Circuit defined severance as "a form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal." 386 F.2d 649, 651 (2d Cir. 1967) (quoting *Adams v. Jersey Central Power & Light Company*, 120 A.2d 737, 740 (N.J. 1956)). In other words, *Straus-Duparquet* stands for the proposition that severance pay is compensation for the termination of employment that is earned in full upon an employee's termination.

---

[14] The dollar amount is adjusted in 3-year intervals pursuant to 11 U.S.C. § 104.

9

A severance right is thus characterized by an entitlement to payment which does not accrue on a day-to-day basis, *Straus-Duparquet*, 386 F.2d at 651, where (i) the payment is due fully to an employee who has served for a given period after termination of employment, *id.*; (ii) the pay is made in lieu of advance notice of job loss, *In re AppliedTheory Corp.*, 312 B.R. 225, 242 (Bankr. S.D.N.Y. 2004); (iii) the job loss does not occur as a result of an employee's misconduct, *id.* at 242; and (iv) the length of the payment bears a reasonable relationship to the length of the employee's service and is not disproportionately high in light of the purpose of severance in alleviating an employee's transient financial hardship due to job loss, *cf. In re Hooker Invs., Inc.*, 145 B.R. 138, 150 (Bankr. S.D.N.Y. 1992).

## Analysis

The Petition Date is June 27, 2022. There is no dispute that the Union Faithful Service Claim accrued "within 180 days before the date of the filing of the petition." Likewise, it is undisputed that those claims do not exceed the sum of $15,150 for any of the Union Employees. At issue is whether the benefits payable under the Faithful Service Clause constitute "severance" payments under section 507(a)(4) of the Bankruptcy Code.

**The Extrinsic Evidence**

In support of their respective arguments, the parties both rely, in part, on extrinsic evidence. The Debtor argues that that the Faithful Service Clause would be called "severance" if the intent of the provision was to confer such a right, since historical CBAs had such a provision. It also argues that the history of negotiations and understanding between the parties confirmed that the Faithful Service Provision did not confer a severance right, but only a bonus. In contrast, the Union argues that the historical CBAs and the Prior Better Conditions Clause in each, taken together, confirm that the Faithful Service Clause confers a right to severance.

A collective bargaining agreement is a contract that is "enforced according to the plain meaning of its terms . . . ." *Matter of Lin v. N.Y.C. Dep't of Educ.*, 142 N.Y.S.3d 10, 12 (App. Div. 1st Dept.) (quoting *Greenfield v. Philles Records*, 780 N.E.2d 166 (N.Y. 2002)). Therefore, unless it is ambiguous, the Court must interpret the May 2021 CBA by itself to determine if it confers a right to severance under section 507(a)(4) of the Bankruptcy Code. *See Greenfield v. Philles Records*, 780 N.E.2d at 170 ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous . . . .").

Under New York law, "[w]hether or not a writing is ambiguous is a question of law to be resolved by the court." *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990). If a writing is not ambiguous, a court may not consider extrinsic evidence to "create an ambiguity in the agreement." *Id.*; *see also Golden Unicorn Enterprises, Inc. v. Audible, Inc.,* No. 21-7059, 2023 WL 4561718, at *5 (S.D.N.Y. July 17, 2023) ("a party's personal, subjective intent is not relevant to the interpretation of a contract").

Neither party argues that the Faithful Service Clause is ambiguous. Therefore, the history of the negotiations and parties' respective understandings of whether the Union Employees enjoyed a severance right is inadmissible. *Cf. Aeneas McDonald Police Benevolent Ass'n v. City of Geneva*, 703 N.E.2d 745, 748 (N.Y. 1998) (emphasis added) ("Courts also may look to the past practice of the parties to give definition and meaning to language in an agreement, including a collective bargaining agreement, *which is ambiguous*."). Moreover, this evidence is inapposite to whether the Union Employees' rights under the Faithful Service Clause constitute a right to "severance" under section 507(a)(4) of the Bankruptcy Code, which is a pure question of law. For the same reason, the previous CBAs are parol evidence to the extent that the Union contends they alter the meaning of the Faithful Service Provision.

11

**The Faithful Service Clause**

The Faithful Service Clause constitutes "severance" under section 507(a)(4) of the Bankruptcy Code. It grants an entitlement to payment in full upon job loss and is due to employees who have served a defined term of years. It does not vest until an employee meets two conditions: first, the employee must have been employed for at least fifteen years. Second, the employee must have become "disabled" or be "permanently laid off."

The Faithful Service Clause requires that the Debtor pay employees in lieu of advance notice of job loss. Nowhere in the May 2021 CBA is the Debtor required to warn employees that they will be laid off permanently; it expressly contemplates that employees may be laid off in the middle of a workday. *See* May 2021 CBA at 9. The Faithful Service Clause compensates employees for the hardship associated with sudden termination. Moreover, under the May 2021 CBA, sudden job loss that occurs as a result of employee misconduct does not qualify for payment under the Faithful Service Clause, which only applies when an employee becomes "disabled" or "permanently laid off." *Cf. Lay off*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/laying%20off (last visited Dec. 23, 2023) ("to cease to employ (a worker) often temporarily"); *accord Lay off someone*, CAMBRIDGE, https://dictionary.cambridge.org/us/dictionary/english/lay-off (last visited Dec. 23, 2023) ("to stop employing a worker, esp. for reasons that have nothing to do with the worker's performance").

The Faithful Service Clause also provides for a payment that is not disproportionately high, at three-weeks' pay. The Debtor does not argue that the payment is disproportionately high, but it implies that the payment is not reasonably related to the length of an employee's service because Union representatives understood the payment to be a retirement bonus. *See* Memorandum at 5 ("Union representatives . . . repeatedly sought and obtained 'faithful service' payments for qualifying

12

retiring employees based on the mutual understanding that [its] purpose . . . is to provide a bonus to long-serving employees when they retired."). This is parol evidence and, as discussed further below, it does not weigh on the Court's analysis. Nonetheless, the suggestion the Faithful Service Provision provides a reward or bonus for past service, at least in part, is not necessarily inconsistent with the purpose of severance. *See In re AppliedTheory Corp.*, 312 B.R. at 242 ("The policy behind severance pay is to 'protect employees from the economic hardship of joblessness, and reward them for past services to their employer.'"). That the Faithful Service Clause applies to employees with at least a fifteen-year tenure does not cut against this conclusion. It merely indicates a limitation on the benefit to newer employees. *See id.* at 243 (noting that in *Straus-Duparquet*, "[e]mployees employed more than three years were entitled to two weeks' pay as severance." (citing 386 F.2d at 650)). A several-week lump sum is also standard for employees who serve long terms and is not akin to a disproportionate gift such that it anticipates that the recipient would have no need to find other work in light of the payment. *See id.* at 243, 246 (comparing terms of service and severance payment amounts and noting that "[p]ayments for the duration and in the amount sought here far exceed the amounts necessary to compensate for the economic hardship of temporary joblessness").

In sum, the Faithful Service Clause is a severance provision under 11 U.S.C. § 507(a)(4). Its minor differences from the paradigmatic severance clause are not differences that fundamentally change the character of the provision such that it confers a right to something other than severance. That conclusion is not altered by the parties' prior dealings or subjective understandings of what rights the Faithful Service Clause conferred upon Union Employees.

13

**Form of Payment**

The Debtor and the Union disagree on whether the Debtor should be required, in paying any allowed part of the Union Claim, to issue a Form W-2 to the Union Employees.  In the Opposition, the Union asserts that pursuant to an agreement between the Debtor and the Union, the Union would not object to confirmation of the Plan so long as the Debtor agreed to escrow the Union Claim in an IOLA account, including the "employer's portion of the escrow and to distribute the undisputed amount on the Effective Date."  Opposition ¶ 16.  Exhibit C to the Opposition details an email conversation between the Debtor's counsel and the Union's counsel taking place between March 15, 2023 and March 16, 2023, wherein the Debtor's counsel acknowledged that the "[m]oney was . . . placed in clients [sic] trust.  We are figuring out employer portion which will be wired as well."  Opposition, Ex. C at 1.

On December 12, 2023, the Court heard oral argument on, among other things, how the Debtor would pay the Union Claim.  At the argument, the Debtor argued that providing the Union Employees with Form W-2s would burden the administration of the Plan given the Debtor's lack of information that it contended would be necessary to compile and distribute them.  Moreover, it maintained that doing so would represent a substantial expense to the estate, which it did not quantify.  The Plan Administrator said that since the Debtor's payroll service has been terminated for longer than a year, the Debtor would need to reengage a payroll service provider to calculate and issue the Form W-2s.  The Debtor asserted that distributing Form 1099s to the Union Employees would remedy these issues.  The Union argued that sending Form 1099s to the Union Employees could burden them with tax issues, that the proposed solution was contrary to the Union's expectations pursuant to its agreements with the Debtor, and that issuing employees a Form 1099 instead of a Form W-2 in this scenario is nonstandard.

14

On December 18, 2023, the Court entered an order directing the parties, by December 22, 2023, to submit supplemental briefing as to their proposed methods of payment to the Union Employees.[15] The parties have not done so. Though the Court recognizes the Debtor's concerns regarding the expediency and costs to the estate of providing the Union Employees with Form W-2s given their termination of the legacy payroll service provider, the Court does not understand this expense to provide a sufficient justification why the Debtor should not be required to pay the Union Employees in the same manner as it had in the past.

## Conclusion

For the reasons above, the Objection is denied. The Court finds that the Union Faithful Service Claim is entitled to priority status under section 507(a)(4) of the Bankruptcy Code. The Debtor will pay the Union Claim as the Plan provides, but will provide the Union Employees a Form W-2 on account of any distributions thereunder and comply with applicable tax law, including with respect to any state or federal contributions it is required to remit as part of the Union Claim.

IT IS SO ORDERED.

Dated: December 23, 2023
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

[15] *December 18, 2023 Memorandum Endorsed Order*, ECF No. 257.